## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JAMES L. BRIEDECKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:20-CV-253-MAB** |
| | ) | |
| **GARNETT WOOD PRODUCTS, INC.,** | ) | |
| **BOB RISBY, and MARK GARNETT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion to dismiss filed by Defendants Garnett Wood Products Co., Inc., Bob Risby, and Mark Garnett (Doc. 22). For the reasons explained below, it is granted in part and denied in part.

### ALLEGATIONS

Garnett Wood Products ("GWP") manufactures, sells, and brokers a variety of wood products including pallets, skids, pallet components, boxes, crates, and other specialty wood products. Plaintiff, a 49-year-old male, began working as a sales representative in the pallet division for GWP in February 1996. Defendant Bob Risby, who is Plaintiff's maternal uncle, is a sales manager for GWP and served as Plaintiff's direct supervisor. Defendant Mark Garnett is the President and owner of GWP.

For Plaintiff's entire career with GWP, he worked out of an office at his home in Southern Illinois. During the approximately first 15 years of his employment with GWP, Plaintiff built a client base in over ten states, including Illinois and Missouri, travelled to

these states, and was compensated for all of his expenses including home office, travel, and business expenses.

In approximately 2017, Bob Risby's son, Robert Risby, Jr., was hired by GWP as a sale representative in the pallet division. Around this same time, Bob Risby began accusing Plaintiff of being dyslexic and asserting that he was incapable of performing daily work activities. Risby repeatedly threatened to hire an additional employee to assist Plaintiff in doing his job and to deduct the costs of the additional employee from Plaintiff's compensation. Prior to this, neither Risby nor anyone else from GWP had ever raised any performance issues with Plaintiff in his 20 years with the company. Bob Risby continued to harass Plaintiff regarding his perceived dyslexia and repeatedly discussed firing Plaintiff throughout 2017 and into 2018.

In 2018, Bob Risby informed Mark Garnett that Plaintiff wanted to quit and continued to discuss Plaintiff's separation from GWP. Plaintiff initially entertained these discussions from Risby even though he did not want to leave his job because he believed that Risby was looking to terminate Plaintiff and to replace him with his son Robert Risby, Jr. Bob Risby told Mark Garnett that Plaintiff was going to quit Defendant effective December 31, 2018. In early December 2018, Plaintiff reported Risby's abuse and harassment to Garnett. Plaintiff told Garnett that he thought Risby was discriminating and harassing him and trying to terminate him in order to replace him with the younger Robert Risby, Jr.

Mark Garnett undertook no investigation into Plaintiff's assertions. Just prior to Christmas in 2018, Garnett presented Plaintiff with a severance agreement that provided

Plaintiff would quit GWP and complete a release of any and all claims, including employment related claims under federal and state law. Plaintiff refused to sign the severance agreement. Garnett then presented Plaintiff with a second severance agreement that provided Plaintiff was discharged from GWP, Plaintiff released all claims against Defendant, and agreed to a non-compete clause. Plaintiff again refused to sign the agreement. In response, Garnett emailed Plaintiff indicating that he hoped to receive the accepted severance agreement by midnight of December 31, 2018, but in any event Plaintiff's employment was terminated as of midnight on December 31, 2018.

Plaintiff asserts discrimination and retaliation claims against GWP under the Age Discrimination in Employment Act, the Americans with Disabilities, the Missouri Human Rights Act, and the Illinois Human Rights Act (Counts 1 through 12). He asserts claims against GWP under the Illinois Sales Representative Act and the Illinois Wage Payment and Collection Act for unpaid compensation (Counts 13, 14). He asserted common law claims for intentional and negligent infliction of emotional distress against Risby and Garnett (Counts 15, 16), respondeat superior and retaliatory discharge against GWP (Counts 17, 18).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the

court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *E.g., Burger v. Cty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (citation omitted). To survive a motion to dismiss, the plaintiff must do more than simply recite the elements of a claim in a conclusory fashion. *Camasta*, 761 F.3d at 736 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face,'" meaning the court can reasonably infer that the defendant is liable for the alleged misconduct. *Burger*, 942 F.3d at 374 (quoting *Iqbal*, 556 U.S. at 678); *Camasta*, 761 F.3d at 736 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

## DISCUSSION

### A. ADEA AND ADA CLAIMS (COUNT 1 THROUGH 4)

Defendants move to dismiss Plaintiff's ADEA and ADA claims pursuant to Rule 12(b)(6) because Plaintiff failed to administratively exhaust those claims prior to filing suit (Doc. 23, pp. 14–15). Specifically, Plaintiff was required to file a charge of discrimination with the EEOC within 300 days of the discriminatory act. *See* 29 U.S.C. § 626(d)(1); 42 U.S.C. § 12117 (applying the 300–day statute of limitations listed in 42 U.S.C.2000e–5(e) to ADA claims); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (citation omitted)). Defendants contend that Plaintiff did not file his charge until December 2, 2019—336 days after he was terminated (Doc. 23, pp. 14–15). Defendants' argument, however, is premature.

The failure to file a timely charge with the EEOC is an affirmative defense that the defendant bears the burden of proving. *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473,

4

475 (7th Cir. 2009). In general, courts should refrain from granting 12(b)(6) motions based on affirmative defenses because a complaint "ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (citations omitted); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Rule 12(b)(6) tests whether the complaint states a facially plausible claim for relief, and "[t]he mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films*, 682 F.3d at 690. Furthermore, affirmative defenses often turn on facts not before the court at the pleadings stage of the proceedings. *Brownmark Films*, 682 F.3d at 690.

Rather than seeking dismissal under Rule 12(b)(6) based on an affirmative defense, a defendant should first raise the defense in their answer and then move for judgment on the pleadings under Rule 12(c). *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019); *Brownmark Films*, 682 F.3d at 690; *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). District courts nevertheless sometimes grant Rule 12(b)(6) motions on the basis of affirmative defenses when "the allegations of the complaint . . . set forth everything necessary to satisfy the affirmative defense." *Hyson*, 821 F.3d at 939.[1] That is, "the factual allegations in the complaint unambiguously

---

[1] The Seventh Circuit explained in *Brownmark Films* that "[t]hough district court have granted Rule 12(b)(6) motions on the basis of affirmative defenses and this court has affirmed those dismissals, we have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to the complaint." *Brownmark Films*, 682 F.3d at 690 n.1. *Accord Mosely*, 434 F.3d at 533 (noting "parties and courts occasionally take short-cuts" and present arguments for dismissal on the basis of an affirmative defense through a 12(b)(6) motion, even though the proper vehicle is a motion for judgment on the pleadings under Rule 12(c)). *See also Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) (explaining district judge "jumped the gun in dismissing case under Rule 12(b)(6)" because res judicata is an affirmative defense and therefore "the defendant should raise it and then move for judgment on the pleadings under Rule 12(c)," but error was "of no consequence" because the judge "had before him all he needed in

establish all the elements of the defense" and the plaintiff has "affirmatively plead[ed] himself out of court." *Hyson*, 821 F.3d at 939 (internal quotation marks and citations omitted). *Accord U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense") (parenthetical in original).

Here, all the complaint says is that Plaintiff received a right to sue letter from the EEOC that was dated December 9, 2019, and he filed this lawsuit in a timely manner (Doc. 1, p. 2). Plaintiff did not plead anything more regarding the charge he filed with the EEOC (*see* Doc. 1). Thus, nothing on the face of the complaint compels the conclusion that Plaintiffs failed to file a timely charge with the EEOC and thus failed to exhaust his administrative remedies prior to filing suit (*see* Doc. 1).

Defendants then submitted Plaintiff's formal EEOC charge with their motion to dismiss and asserted that the Court can consider this document in deciding the motion (Doc. 23, p. 10 n.1; Doc. 23-2). The charge indicates that it was received by the EEOC on December 2, 2019, which was 336 days after Plaintiff was terminated (Doc. 23-2). Therefore, according to Defendants, Plaintiff's charge was untimely (Doc. 23, p. 11). But Plaintiff countered that he actually provided the EEOC with information sufficient to constitute a charge much earlier than when the formal charge was received on December 2, 2019 (Doc. 28, pp. 4–5, 8–11). Specifically, he says he first contacted the EEOC in January

---

order to be able to rule on the defense"); *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009) (disregarding the difference between a motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c) because "the practical effect is the same" when the complaint sets forth all of the information necessary to decide an affirmative defense).

2019, met with someone from the EEOC and provided all the necessary information in March 2019, and remained in contact with and continued providing information to the EEOC throughout the spring and summer of 2019. He communicated with the EEOC one last time in October 2019, after which he received a letter dated October 31, 2019, stating that "a document" previously submitted to the EEOC "constitutes a charge of discrimination . . . [and the EEOC] notified the employer that you filed a charge" (Doc. 28-1). The EEOC also provided Plaintiff with a formal "EEOC Form 5, Charge of discrimination" that summarized his claims based on the information he had provided and instructed him to sign and return it within 30 days (Doc. 28-1). Plaintiff signed the EEOC Form 5 on November 25, 2019 and the EEOC received it on December 2, 2019 (Doc. 23-1). It appears the EEOC Form 5 is the document Defendants provided and claim is Plaintiff's "charge."

To the extent that there was an earlier submitted document that satisfied the charge filing requirement as indicated by the EEOC, Defendants acknowledge that there is no information as to what that document was or when it was submitted to the EEOC (Doc. 32, p. 2). They argue this ambiguity should be held against Plaintiff, stating that "[b]ecause Plaintiff failed to allege these facts, the Court has no basis to conclude that any document was filed in a timely manner that would exhaust his administrative remedies under the ADA or ADEA," and therefore, his claims should be dismissed (*Id.* at pp. 2–3). But as previously stated, Plaintiff had no obligation to allege facts negating an affirmative defense in his complaint. And even if the Court considered the documents submitted by

7

the parties with their briefings on the motion to dismiss, it still would not have all of the facts needed to resolve the issue of exhaustion.[2]

In sum, neither the allegations in the complaint nor the documents submitted by the parties in their briefing on the motion to dismiss unambiguously establish that Plaintiff failed to file a timely charge with the EEOC prior to filing suit. Plaintiff therefore has not pleaded himself out of Court and the portion of Defendants' motion to dismiss pertaining to exhaustion of the ADEA and ADA claims must be denied.

## B.  CLAIMS UNDER THE ILLINOIS HUMAN RIGHTS ACT

Defendants argue that Plaintiff also failed to administratively exhaust his IHRA claims prior to filing suit (Doc. 23, pp. 14–15). Under Illinois law, in order to file suit under the IHRA, Plaintiff had to file a charge of discrimination with the Illinois Department of Human Rights within 300 days of the last date of the alleged discrimination or retaliation and receive a right-to-sue letter.  775 ILL. COMP. STAT. 5/7A-102(A). The IDHR has a work-sharing agreement with the EEOC, whereby a charge filed with the EEOC is automatically cross-filed with the IDHR. 775 Ill. Comp. Stat. 5/7A-102(A-1)(1); *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016).

Defendants once again contend that Plaintiff did not file his charge until December 2, 2019—336 days after he was terminated (Doc. 23, pp. 14–15). But as discussed in the previous section, Plaintiff did not plead anything regarding the timing of his EEOC

---

[2] Plaintiff further argues in the alternative that if his EEOC charge was untimely, equitable tolling applies and saves his claim (Doc. 28, pp. 11–12). He also argues that Defendants' discrimination and retaliation continued past his termination date while he was applying for unemployment benefits (Doc. 28, pp. 12–13). The Court declines to address these arguments.

charge, nor was he required to. And the materials currently on the record do not unambiguously establish when Plaintiff's EEOC charge was filed. Consequently, Plaintiff has not pleaded himself out of Court and the portion of Defendants' motion to dismiss pertaining to the IHRA claims must be denied.

## C. CLAIMS UNDER MISSOURI HUMAN RIGHTS ACT

Defendants argue that Plaintiff's claims under the MHRA must be dismissed because Plaintiff failed to administratively exhaust those claims prior to filing suit (Doc. 23, pp. 11–12). In order to file suit under the MHRA, Plaintiff had to file a charge of discrimination with the Missouri Commission on Human Rights ("MCHR") within *180 days* of the last date of the alleged discrimination or retaliation and receive a right-to-sue letter. Mo. REV. STAT. §§ 213.075(1), 213.111(1); *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000). Like Illinois, the MCHR also has a work-sharing agreement with the EEOC, whereby a charge filed with the EEOC is automatically cross-filed with the commission. Mo. REV. STAT. § 213.075(2). Defendants' argument that Plaintiff failed to exhaust his MHRA claims is unavailing for the same reasons stated above with respect to Plaintiff's claims under the IHRA.

Defendants next argue that Plaintiff's claims under the MHRA are not cognizable because he did not identify any unlawful discriminatory practice that occurred in Missouri (Doc. 23, pp. 12–13). In order to have an actionable claim under the MHRA, a person must be aggrieved by or suffer an adverse impact from an allegedly unlawful discriminatory practice. *Tuttle v. Dobbs Tire & Auto Centers, Inc.*, 590 S.W.3d 307, 310 (Mo. 2019); *State ex rel. Anheuser-Busch, LLC v. Moriarty*, 589 S.W.3d 567, 571 (Mo. 2019). In

determining whether the MHRA is applicable, courts look to whether the adverse impact—not the discriminatory practice or decisions—occurred in Missouri. *Tuttle*, 590 S.W. at 311–312; *Moriarty*, 589 S.W.3d at 571–72.

In *Tuttle*, the plaintiff sued his former employer Dobbs Tire and Auto Centers, Inc., where he had worked for approximately 28 years. *Tuttle*, 590 S.W. at 309. Dobbs is headquartered in Missouri but had stores in both Missouri and Illinois. *Id.* The plaintiff was the store manager of a Dobb's Tire store in Shiloh, Illinois. *Id.* He alleged that he became the target of discriminatory employment practices in 2015 because of his age. *Id.* He timely filed a charge with the MCHR, was issued a right-to-sue notice, and filed suit in St. Louis County Court claiming age discrimination and retaliation in violation of the MHRA. *Id.* The Supreme Court of Missouri affirmed the dismissal of his claims, however, because "the manner in which he was aggrieved [was] his loss of wages in Illinois, benefits of his employment in Illinois, and mental anguish arising from his constructive discharge from his Illinois job," which meant the adverse impact from the alleged discriminatory practices occurred in Illinois, not Missouri. *Id.* at 311. The fact that certain discriminatory decisions may have occurred in Missouri did not matter because "decisions are not actionable under the MHRA." *Id.* at 312. "Adverse impacts from discriminatory practices are actionable," and those occurred in Illinois. *Id.*

In *Moriarty*, the plaintiff sued his former employer Anheuser-Busch, LLC, where he worked for over 30 years. *Moriarty*, 589 S.W.3d at 568–69. The plaintiff was a retail sales director over a sales territory that included Iowa, Minnesota, Nebraska, North Dakota, and South Dakota. *Id.* at 568. He worked out of his home in Iowa when he was

not traveling throughout his sales territory. *Id.* His direct supervisor, secretary, and other support staff were located in A-B's regional sales office in St. Louis, Missouri. *Id.* The plaintiff made monthly trips to the St. Louis office for meetings, reviews, and training. *Id.* He alleged that he became the target of discriminatory employment practices in 2012 because of his age. *Id.* He timely filed a charge with the MCHR, was issued a right-to-sue notice, and filed suit in St. Louis County Court claiming age discrimination and retaliation in violation of the MHRA. *Id.* at 569. The Supreme Court of Missouri noted that "[s]everal adverse impacts" arose from the alleged discriminatory decision-making process, "including lower performance reviews in regards to his Iowa job, loss of wages and employment benefits from his Iowa job, emotional distress because of actions taken toward his Iowa job, and demotion from his Iowa job." *Id.* at 571–72. Because the plaintiff was aggrieved solely in Iowa, the MHRA did not provide him with any relief, regardless of whether the alleged discriminatory decision-making process occurred in Missouri. *Id.* at 572.

Here, Defendants argue that "[l]ike the plaintiff's [sic] in *Tuttle* and *Moriarty*, all adverse impacts arising from the alleged discriminatory conduct impacted Plaintiff in Illinois" because Plaintiff is an Illinois resident and worked from his home in Southern Illinois (Doc. 23, pp. 13–14). Plaintiff, however, contends that there is an unresolved issue of fact as to where the adverse employment action transpired (Doc. 28, pp. 13–14). Two of the points made by Plaintiff give the Court pause and may very well distinguish his case from *Tuttle* and *Moriarty*. First, Plaintiff applied for and received Missouri unemployment benefits (Doc. 23-1, pp. 3–4; Doc. 28, p. 14). Second, he sold products to

11

customers in approximately ten states, including Missouri (Doc. 28, pp. 13–14). These allegations make it *plausible* that Plaintiff's job was a Missouri job where he earned Missouri wages.[3] This is enough to state a claim and survive a Rule 12(b)(6) motion to dismiss.

For these reasons, the portion of Defendants' motion to dismiss pertaining to the MHRA claims must be denied.

**D.  CLAIM UNDER THE ILLINOIS SALES REPRESENTATIVE ACT (COUNT 13)**

Plaintiff alleges that GWP violated the Illinois Sales Representative Act ("ISRA") by not paying him all of the commissions he earned (Doc. 1, pp. 18–19). Defendants argue that Plaintiff's claim under the ISRA must be dismissed because he alleges throughout the Complaint that he was an "employee" of GWP and "employees" are specifically excluded from the protections of the ISRA (Doc. 23, pp. 15–16). Defendants' argument is unavailing.

The ISRA creates a cause of action for a principal's failure to pay "commissions due at the time of termination of a contract between a sales representative and principal . . . and commissions that become due after termination." 820 ILL. COMP. STAT. 120/2. A "sales representative" is defined as "a person who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission, but shall not include one who places orders or purchases for his own account for resale or one who qualifies

---

[3]   *See, e.g.*, U.S. Dep't of Labor, *How Do I File for Unemployment?*, https://www.dol.gov/general/topic/unemployment-insurance#:~:text=Generally%2C%20you%20should%20file%20your,your%20claim%20with%20other%20 states (last visited Jan. 5, 2021) (indicating that one generally files for unemployment "in the state where [they] worked")

as an employee of the principal pursuant to the Illinois Wage Payment and Collection Act." 820 ILL. COMP. STAT. 120/1(4).

Here, Plaintiff alleges that he is owed compensation for providing services during his employment with GWP, be it commissions under the Illinois Sales Representative Act (Count 13) or wages under the Illinois Wage Payment and Collection Act (Count 14) (Doc. 1, pp. 18–20). These claims are pleaded as alterative theories of relief as permitted by Rule 8(d). FED. R. CIV. P. 8(d); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) ("Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'") (citation omitted). Plaintiff's references to his "employment" throughout the complaint, (*see* Doc. 23, p. 15 *citing* Doc. 1, ¶¶1, 16, 17, 29, 38) do not somehow constitute binding admissions or legal conclusions that he was an "employee" and therefore not covered by the ISRA, as Defendants contend. Whether Plaintiff was a "sales representative" or an "employee" and whether his compensation was characterized as sales commissions or wages are issues of fact that cannot be resolved at the pleadings stage.

Accordingly, the portion of Defendants' motion to dismiss regarding Plaintiff's claims under the ISRA is denied.

### E. CLAIM UNDER THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT (COUNT 14)

Plaintiff alleges that GWP violated the Illinois Wage Payment and Collection Act ("IWPCA") by not paying him all of the wages he earned during his employment (Doc.

1, pp. 19–20). Defendants argue that Plaintiff cannot bring a claim under the IWPCA because (1) GWP is not an Illinois employer subject to the Act and (2) Plaintiff failed to plead the elements of an IWPCA claim (Doc. 23, p. 16).

"The IWPCA provides employees with a cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (citing 820 ILL. COMP. STAT. 115/3). "[T]o state a claim under the IWPCA, the drivers are required to demonstrate that they are owed compensation from defendants pursuant to an employment agreement." *Enger*, 812 F.3d at 568.

GWP contends that, as a Missouri company, it is not governed by the IWPCA because it only applies to Illinois employers (Doc. 23, pp. 16–17). This contention must fail. Illinois regulations "make clear that the Wage Act can apply to out-of-state employers, where the work is performed in Illinois and the employer has 'sufficient contacts in the State.'" *Watts v. ADDO Mgmt., L.L.C.*, 97 N.E.3d 75, 83 (Ill. App. Ct. 2018) (citing 56 Ill. Adm. Code 300.440(c) (2014)). And Illinois courts "have previously held that 'a corporation with no headquarters or physical presence in Illinois can still qualify as an Illinois employer under the Wage Act,' where the plaintiffs make allegations of sufficient contacts with the state." *Watts*, 97 N.E.3d at 83 (citing *Elsener v. Brown*, 996 N.E.2d 84, 99 (Ill. App. Ct. 2013)).

Here, Plaintiff alleges that GWP "[does] business in Illinois," that he worked out of an office in his home in Illinois, and that he sold wood pallets to customers in Illinois (Doc. 1, pp. 2–3). Taking all well-pleaded facts as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has sufficiently alleged

14

GWP's contacts with Illinois and in-state activity so as to survive a motion to dismiss. *See NPF Racing Stables, LLC v. Aguirre*, No. 18 C 6216, 2020 WL 1322847, at *6 (N.D. Ill. Mar. 20, 2020) (refusing to dismiss IWPCA claims against an Indiana company where the ranch the plaintiff worked at was in Illinois and therefore "the work relevant to [her] IWPCA claim . . . occurred in Illinois, allowing her to invoke the IWPCA."); *Crisostomo v. Schneider-Kidan*, No. 16 C 6406, 2017 WL 2880893, at *7 (N.D. Ill. July 6, 2017) (refusing to dismiss IWPCA claims against a corporation headquartered in Pennsylvania where the corporation maintained an office in Illinois at which the plaintiff worked); *McGreal v. Semke*, 836 F. Supp. 2d 735, 740 (N.D. Ill. 2011) (refusing to dismiss IWPCA claims against a Missouri corporation headquartered in Missouri where the plaintiff alleged the corporation maintained an office in Illinois, marketed its services in Illinois, and conducted substantial business in Illinois); *Watts*, 97 N.E.3d at 84 (refusing to dismiss IWPCA claims where the "plaintiffs were Illinois residents and . . . the work they performed originated and ended in Illinois.").

As for Defendants' argument that Plaintiff failed to plead the elements of an IWPCA claim, this argument also fails. According to Defendants, Plaintiff failed to plead the elements of an IWPCA claim because he did not explicitly allege that he was owed compensation "under an employment 'contract or agreement'" (Doc. 23, pp. 17–18). This is a technicality and it does not deprive Defendants of fair notice of the nature of Plaintiff's claim, which is all the federal pleading standards require. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff alleged that approximately eight to ten years

after he began working at GWP, his compensation package was changed, eliminating an annual salary and becoming 100% commission based plus expenses, health care coverage and profit sharing (Doc. 1, p. 3). It can reasonably be inferred from this allegation that Plaintiff and GWP had an employment contract or agreement. *Burger v. Cty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (in reviewing motion to dismiss, courts "accept the well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor."); *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1059 (Ill App. Ct. (2005) (holding an employment agreement for purposes of the IWPCA "requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract." (citing *Zabinsky v. Gelber Group, Inc.*, 807 N.E.2d 666 (Ill. App. Ct. 2004))).

Accordingly, the portion of Defendants' motion to dismiss arguing that Plaintiff's claims under the IWPCA must be dismissed is denied.

## F.  CLAIMS FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants argue these claims must be dismissed because they are preempted by the Illinois Human Rights Act (Doc. 23, pp. 18–23). They further argue that the NIED claim is preempted by the Illinois Workers' Compensation Act (*Id.*). Finally, Defendants argue that even if Plaintiff's claims aren't preempted, they should still be dismissed because Plaintiff failed to plead extreme and outrageous conduct required to establish an IIED claim and he failed to plead the elements of a NIED claim (*Id.*).

The Court begins by noting that preemption under the exclusivity provision of a state statute is normally an affirmative defense. *See, e.g., Baylay v. Etihad Airways P.J.S.C.,*

16

881 F.3d 1032, 1039 (7th Cir. 2018). However, the Seventh Circuit has affirmed the dismissal of preempted claims under Rule 12(b)(6) when the defense was conclusively established by the complaint and/or concessions made by the plaintiff. *Id.* at 1040; *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017); *Krocka v. City of Chicago*, 203 F.3d 507, 516–17 (7th Cir. 2000).

The Illinois Workers' Compensation Act provides the exclusive means by which an employee can recover against an employer for accidental injuries sustained during the course of employment. *Baylay*, 881 F.3d at 1038–39 (citing 820 Ill. Comp. Stat. 305/5(a), 305/11). Claims sounding in negligence, such as Plaintiff's NIED claim, are barred by the exclusivity provisions of the IWCA. "An employee's claims of employer negligence and willful and wanton conduct fall within the definition of 'accidental.'" *Baylay*, 881 F.3d at 1039 (citing *Lannom v. Kosco*, 634 N.E.2d 1097, 1100–01 (Ill. 1994). *Accord Arnold v. Janssen Pharmaceutica, Inc.*, 215 F.Supp.2d 951, 956 (N.D. Ill. 2002)). Accordingly, the IWCA "abrogates employer liability for all common law negligence claims[.]" *Baylay*, 881 F.3d at 1039 (citing *Walker v. Doctors Hosp.*, 110 F.Supp.2d 704, 714 (N.D. Ill. 2000)). Consequently, Plaintiff's NIED claim is barred by the exclusivity provisions of the IWCA and must be dismissed. Having reached this conclusion, the Court need not address whether this claim is also preempted by the IHRA or whether it is sufficiently pleaded.

As for Plaintiff's IIED claim, the Court agrees with Defendants that this claim is preempted by the IHRA. The IHRA prohibits employment discrimination based on, amongst other things, age and mental disability. 775 ILL. COMP. STAT. § 5/1-102(A). It "is the exclusive remedy for civil-rights violations." *Nischan v. Stratosphere Quality, LLC*, 865

17

F.3d 922, 934 (7th Cir. 2017) (citing 775 ILCS 5/8-111(D)). Consequently, the IHRA preempts common law tort claims that depend on and are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997) (cited by *Nischan*, 865 F.3d at 934); *see also Bannon v. Univ. of Chicago*, 503 F.3d 623, 630 (7th Cir. 2007) ("If the plaintiff's allegations against the defendant implicate only a duty provided by the IHRA, such as the duty of employers to refrain from discriminating against employees on the basis of their race or national origin, then the plaintiff's claim is preempted.") (citing *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006)). However, when the discrimination aspect of the case is "merely incidental" to what is otherwise an ordinary common law tort claim, then the claim is not preempted. *Naeem*, 444 F.3d at 604 (quoting *Maksimovic*, 687 N.E.2d at 23). "That is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not 'furnish the legal duty that the defendant was alleged to have breached,' the IHRA does not preempt a state law claim seeking recovery for it." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (quoting *Maksimovic*, 687 N.E.2d at 23). To determine whether a common law claim is "inextricably linked" to a civil rights violation, courts ask whether the plaintiff can prove the elements of the common law claim independent of the legal duty not to discriminate against him. *Naeem*, 444 F.3d at 604. *Nischan*, 865 F.3d at 934 ("To determine whether claims are 'inextricably linked,' we ask whether the plaintiff can establish 'a basis for imposing liability on defendants . . . without reference to the legal duties created by the IHRA.'" (quoting *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009))).

18

Here, Plaintiff alleges that Bob Risby caused him emotional distress by harassing him and criticizing his work based on a perceived disability and that Risby orchestrated Plaintiff's termination so that Risby's son could have Plaintiff's job (Doc. 1). The core theory of Plaintiff's IIED claim, as currently pleaded, is that he was the victim of disability and age discrimination. It is therefore inextricably linked to the civil rights violation and is barred by the exclusivity provisions of the IHRA.

In an effort to save his IIED claim, Plaintiff argues that it is possible to view the allegations about Risby as being independent of any duty imposed by the IHRA (Doc. 28, p. 18). For example, Plaintiff could be claiming that regardless of Risby's motivation, Risby's hostile attitude towards him, denigration of his abilities and intelligence, and efforts to push him out of the company caused him distress. Even if true, this type of conduct is not the kind of "extreme and outrageous conduct" needed to support an IIED claim. *See Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2008); *Bannon v. Univ. of Chicago*, 503 F.3d 623, 630 (7th Cir. 2007) (citing *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867–68 (Ill. 2000)); *Honaker v. Smith*, 256 F.3d 477, 491 n.10 (7th Cir. 2001). *But see Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (affirming jury verdict for plaintiff on IIED claim where plaintiff was pregnant and the evidence showed a pattern of behavior by her employer of piling on extra work, creating impossible deadlines, incessantly and publicly criticizing her work performance, and deliberately sabotaging her access to files).

Consequently, Plaintiff's claims for intentional infliction of emotional distress must be dismissed because it is barred by the exclusivity provisions of the IHRA and fails

to allege extreme and outrageous conduct. It is possible, however, that Plaintiff may be able to allege facts that qualify as extreme and outrageous and overcome the exclusivity defense. Consequently, he will be given an opportunity to amend his complaint.

### G. Respondeat Superior Claim (Count 17)

Plaintiff alleges a respondeat superior claim against GWP based on his claims for IIED and NIED asserted against Garnett and Risby (Doc. 1). Because the underlying IIED and NEID claims are being dismissed, the respondeat superior claim must also be dismissed. The dismissal is without prejudice and can be reasserted if Plaintiff amends his complaint to reallege the IIED claim.

### H. Retaliatory Discharge Claim

Defendants argue this claim must be dismissed because it is preempted by the Illinois Human Rights Act (Doc. 23, pp. 24–25). The Court agrees. Plaintiff alleges that he was terminated in retaliation for reporting Bob Risby's discrimination and harassment (Doc. 1). This is identical to Plaintiff's claim for retaliation under the IHRA and wholly based on the purported civil rights violation. Because Plaintiff's common law claim for retaliatory termination and IHRA claim are one and the same, the common law claim is barred by the exclusivity provision of the IHRA. The motion to dismiss as to Count 18 for retaliatory discharge is granted. The dismissal is without prejudice because, again, it is possible that Plaintiff may be able to allege facts to overcome the exclusivity defense. Consequently, he will be given an opportunity to amend his complaint

### CONCLUSION

The motion to dismiss (Doc. 22) is **GRANTED IN PART and DENIED IN PART.** It is **GRANTED** as to Plaintiff's claims of negligent infliction of emotional distress (Count 15). This claim is **DISMISSED** with prejudice. It is also **GRANTED** as to Plaintiff's claims of intentional infliction of emotional distress (Count 16), respondeat superior (Count 17), and retaliatory discharge (Count 18). These claims are **DISMISSED without prejudice** and Plaintiff is **GRANTED** leave to amend his complaint on or before February 1, 2021 to reassert these claims. If Plaintiff declines or fails to amend his complaint by the deadline, the dismissal of these claims will be converted to a dismissal *with prejudice.*

The motion to dismiss is **DENIED** as to Plaintiff's claims under the ADEA (Counts 1 and 2), the ADA (Counts 3 and 4), the Missouri Human Rights Act  (Count 5 through 8), the Illinois Human Rights Act (Counts 9 through 12), the Illinois Sales Representative Act (Count 13), and the Illinois Wage Payment and Collection Act (Count 14). This matter will proceed on Counts 1 through 14.

**IT IS SO ORDERED.**

**DATED:  January 5, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

21