## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JAMES LOUIS BREIDECKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:20-CV-253-MAB** |
| | ) | |
| **GARNETT WOOD PRODUCTS CO., INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on several pending motions, including Defendant's Motion for Sanctions (Doc. 112), Plaintiff's Second Motion to Reconsider (Doc. 124), a duplicate of which Plaintiff filed as an "Appeal of Magistrate Judge Decision to District Court" (Doc. 126).

### BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case, which were thoroughly laid out in its previous orders (*see* Doc. 118, pp. 1–7; Doc. 109; Doc. 105; Doc. 98, pp. 1–5). The Court now recounts only the procedural history relevant to this Order.

In May 2023, the Court granted Defendant's motion to enforce the settlement that was reached between the parties almost a year prior at mediation (Doc. 98). Plaintiff was ordered to sign the comprehensive written settlement agreement or to propose revisions to defense counsel, (Doc. 98), but he did neither. Instead, he continued to argue that there

was no valid and enforceable settlement (Docs. 100, 102). The Court rejected Plaintiff's arguments, but did set a hearing for November 14, 2023, to hear from both sides about Plaintiff's apparent objection to language or terms of the comprehensive settlement agreement that he deemed "materially different" than the terms agreed to at the mediation (Docs. 105, 106). Plaintiff, however, failed to show at the hearing (*see* Doc. 108). Defense counsel asked the Court to dismiss the case, but at that point, the Court was not fully convinced that Plaintiff's failure to appear was tantamount to a refusal to comply with the Court's orders and efforts to finalize the settlement (Doc. 108; *see also* Doc. 118, pp. 3–4). Defense counsel then asked the Court to award reasonable costs and fees associated with his and his client's preparation for and appearance at the hearing (Doc. 108). The Court indicated it was inclined to grant Defendant's request for costs and fees and instructed Defendant to file an appropriate motion (Doc. 108). The Court also issued an Order to Show Cause to Plaintiff (Doc. 109; *see also* Doc. 108).

Plaintiff filed a written response to the Show Cause Order (Doc. 110), which the Court found wanting (*see* Doc. 114). A follow-up Show Cause hearing was therefore set for February 8, 2024, to inquire further into Plaintiff's reasons for failing to appear at the hearing in November and whether he intended to finalize the settlement (Doc. 114). In the meantime, Defendant filed its motion for sanctions on December 22, 2023 (Doc. 112). Plaintiff did not respond until over six weeks later on February 7, 2024 (Doc. 116). In his submission, Plaintiff objected to Defendant's request for sanctions and also asked the Court to postpone the Show Cause hearing scheduled for the following day (Doc. 116; *see also* Doc. 118, p. 7). The Court determined that Plaintiff's response demonstrated he had

no intention of complying with the Court's orders and efforts to finalize the settlement, and the Court entered an Order on February 9, 2024, vacating the settlement between the parties and dismissing this case with prejudice pursuant to Federal Rule of Civil Procedure 41(b) based on Plaintiff's failure to comply with the Court's orders (Doc. 118; *see also* Doc. 119).

Since then, Plaintiff has made a number of efforts to have the dismissal reversed. First, on February 24, 2024, he filed a "Jurisdictional Memorandum," in which he "object[ed] to Magistrate Beatty's . . . Findings and Recommendations" and asked that a district judge "'reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions in accordance with FRCP 72(b)(3)." (Doc. 121). Plaintiff was advised, however, that de novo review by a district judge of the undersigned's Orders was not available because the parties consented to the jurisdiction of a magistrate judge, and the undersigned was accordingly assigned to conduct all proceedings in this case, including trial and final entry of judgment (Doc. 122; *see also* Docs. 7, 16, 17). 28 U.S.C. sec. 636(c); FED. R. CIV. P. 73. To the extent that Plaintiff's submission could be construed as a motion to reconsider under Federal Rule of Civil Procedure 59(e) and/or 60(b), it was denied because he did not advance any ground for relief under either Rule, nor address any of the issues that led to the dismissal of this case or represent that he was willing to finalize the settlement (Doc. 122). *See* Fed. R. Civ. P. 59(e), 60(b); *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) ("Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact . . . . Vacating a

judgment under Rule 60(b) is permissible for a variety of reasons including mistake, excusable neglect, newly discovered evidence, and fraud."). Plaintiff was advised to consult the Notice previously entered for further information on how to contest the Order dismissing the case (Doc. 122; *see* Doc. 118, pp. 11–12 (Notice)).

On March 7, 2024, Plaintiff filed a "Second Motion for Reconsideration," presumably for the undersigned to decide (Doc. 124). Within minutes, however, he filed a duplicate motion and titled it as an "Appeal of Magistrate Judge Decision to District Court," seemingly suggesting that he wanted a district judge to rule on his motion to reconsider (Doc. 126). He also filed a Notice of Appeal (Doc. 125). The Seventh Circuit Court of Appeals has suspended briefing on the appeal pending a ruling from this Court on Plaintiff's "motion to reconsider." (*see* Doc. 134; Doc. 135).

## A. PLAINTIFF'S APPEAL OF MAGISTRATE JUDGE DECISION TO DISTRICT COURT

The Court will begin by deciding who should consider Plaintiff's motion to reconsider: the undersigned or a district judge. This requires the Court to review Plaintiff's "Appeal of Magistrate Judge Decision to District Court" and the applicable law to determine whether it should be construed as containing a request to withdraw consent to magistrate judge jurisdiction (*see* Doc. 131).

Under 28 U.S.C. § 636(c)(4), "[t]he court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection." "In order to implement subpart (c)(4) 'by the book,' it appears that it would be necessary for the party wishing to revoke consent to the magistrate judge's authority to file a motion with 'the court' to

vacate the reference." *Brown v. Peters*, 940 F.3d 932, 936 (7th Cir. 2019); *see also* FED. R. CIV. P. 73(b) ("[o]n its own for good cause—or when a *party* shows extraordinary circumstances—the district judge may vacate a referral to a magistrate judge under this rule") (emphasis added).

Here, Plaintiff did not file a formal, standalone motion to revoke his consent to magistrate judge jurisdiction. His motion to reconsider did not include an explicit request to revoke his consent (*see* Docs. 124, 126). Nor did it contain anything that could be considered an implicit request (*see id.*). For example, Plaintiff did not use the word "revoke," or any similar words like "withdraw," "vacate," or "void" (*see id.*). He did not ask the undersigned to "recuse" or to be "removed" from the case (*see id.*). Nor did he cite or even reference the legal standard for revoking consent (*see id.*). Simply put, his motion to reconsider is devoid of any indication that he is asking to revoke his consent to magistrate judge jurisdiction. The Court also notes that Plaintiff did not set forth any extraordinary circumstances that might justify vacating the referral (*see id.*). He simply disagrees with how the undersigned has handled the case and wants a district judge to look over the undersigned's decisions. But an adverse decision is not an extraordinary circumstance that would justify allowing a party to revoke or withdraw consent.[1]

---

[1] *See Milhous v. Metro. Gov't of Nashville & Davidson County*, 221 F.3d 1335 (6th Cir. 2000) (unpublished) ("[N]o 'extraordinary circumstances' were shown here but, rather, the plaintiff simply was displeased with the magistrate's rulings on the motions to dismiss"); *Kitterman v. Kelly*, No. 20-CV-500-NJR, 2020 WL 13819900, at *2 (S.D. Ill. Dec. 11, 2020); *Cottingham v. Eplett*, 2020 WL 533945, at *6 (E.D. Wis. Feb. 3, 2020) (acknowledging that if "the court were to allow an adverse decision to constitute an 'extraordinary circumstance' under the Magistrate Judges Act, it would defeat the purpose of the consent procedure"); *Pullins v. Amazon.com.indc, LLC*, 2015 WL 13639196, at *1 (S.D. Ind. May 22, 2015) ("Although Plaintiff may believe he has been treated unfairly, this belief is not enough to invalidate his consent to the magistrate judge"). *See also* 12 CHARLES ALLEN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3071.3 (3d

For these reasons, Plaintiff's "Appeal of Magistrate Judge Decision to District Court" cannot reasonably be construed as an attempt to withdraw his consent to magistrate judge jurisdiction. Therefore, the referral of this matter to a magistrate judge remains in effect, and the undersigned will decide the motion to reconsider.

## B. MOTION TO RECONSIDER

Plaintiff indicates that he is seeking reconsideration of four orders: (1) the May 12, 2023 Order, (2) the October 23, 2023 Order, (3) the January 17, 2024 Order, and (4) the February 9, 2024 Order (Doc. 124, p. 1). Plaintiff states that he is seeking reconsideration of these Orders pursuant to Federal Rules of Civil Procedure 59 and 60(b) (Doc. 124, p. 1). Because Plaintiff's motion was filed within 28 days of the entry of judgment, it could procedurally qualify as either a motion to alter or amend judgment under Rule 59(e) or as a motion for relief from judgment under Rule 60(b). Plaintiff's motion, however, fails to demonstrate that relief is warranted under either Rule.

A motion under Rule 59(e) may be granted only if the movant presents newly discovered evidence that was not previously available or points to evidence in the record that clearly establishes the court committed a manifest error of law or fact. *Robinson v. Waterman,* 1 F.4th 480, 483 (7th Cir. 2021) (citation omitted); *Miller v. Safeco Ins. Co. of Am.,* 683 F.3d 805, 813 (7th Cir. 2012) (citation omitted). Relief from a judgment under Rule 60(b) is permitted in six specified circumstances:

---

ed.) (noting Senate Judiciary Committee's explanation in 1979 that the power to remove a case from a magistrate judge should be "exercised only when it is appropriate to have the trial before an article III judicial officer because of the extraordinary questions of law at issue and judicial decision making [it] likely to have wide precedential importance.") (citing S.Report No. 74, 96th Cong., 1st Sess. 14 (1979))

> (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b). "Relief under Rule 60(b) is an extraordinary remedy that is to be granted only in exceptional circumstances." *Talano v. N.W. Med. Faculty Found., Inc.,* 273 F.3d 757, 762 (7th Cir. 2001). *See also Cash v. Illinois Div. of Mental Health,* 209 F.3d 695, 698 (7th Cir. 2000) (Rule 60(b) "exists to allow courts to overturn decisions where 'special circumstances' justify an 'extraordinary remedy.'") (citation omitted).

## 1. Reconsideration of the Orders dated May 12, 2023, and October 23, 2023

The Order dated May 12, 2023, granted Defendant's motion to enforce the settlement and the subsequent Order dated October 23, 2023, denied Plaintiff's motion to reconsider (Doc. 124, p. 1; *see* Docs. 98, 105). Plaintiff's current motion is therefore a second, successive motion to reconsider the decision to enforce the settlement. Plaintiff did not, however, expressly identify the ground(s) for reconsideration that support his motion (*i.e.,* newly discovered evidence; manifest error of fact or law; mistake, inadvertence, surprise, or excusable neglect; fraud, misrepresentation, or misconduct by an opposing party; etc.) (*see* Doc. 124). The Court knows through its experience in handling this matter that a number of statements/arguments that Plaintiff made in his motion touch on or are tied up with the Court's decision to enforce the settlement. For example, he claims that the Court's ruling relies on inappropriate attorney testimony and

hearsay evidence and that the Court ignored his objections to the same (Doc. 124, p. 1). He recounts some of his former attorney's purported failings and some of Bob Risby's conduct that he maintains was wrongful and that he only learned about after the mediation (*Id.* at pp. 3–4, 5–6). He asserts that Defendant participated in bad faith in the mediation (*Id.* at p. 4). And he once again maintains that he revoked his assent to the settlement and/or that there was no binding settlement agreement, and therefore he cannot be made to sign the settlement documents (*Id.* at pp. 2, 8–9).

The Court has heard all of these arguments before (*see* Docs. 87, 88, 96, 102). And they were all rejected, some explicitly, and some implicitly without discussion because they were patently without merit and did not warrant any mention (*see* Doc. 98, 105). Neither Rule 59 nor Rule 60 permit successive motions to reconsider that simply recapitulate arguments already presented and rejected. *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.") (citation omitted). The Court need not give any additional attention to matters already decided, particularly since Plaintiff did not say anything new or offer any explanation or special circumstances that would justify consideration of the same arguments for a third time.

The only argument that bears any mention is Plaintiff's assertion that the Court erred in enforcing the settlement because the draft of the comprehensive settlement agreement contained a provision that gave him the right to revoke, which he exercised (Doc. 124, p. 9). The exact language of the draft settlement agreement states: "Employee

understands that Employee has seven (7) days from the date of signing the Agreement to revoke the release in this paragraph"—meaning paragraph four, which is titled "Specific Release of ADEA Claims"—by delivering notice of revocation to Employer . . . before the end of the seven-day period[.]" (Doc. 107, pp. 3–4, para. 4(f)). While Plaintiff's argument may seem to have potential merit at first blush, there are at least two reasons that it does not justify any relief.

As an initial matter, the Court notes that, as drafted, the right to revoke in paragraph 4 of the proposed comprehensive settlement agreement was limited to Plaintiff's agreement to settle his claims arising under the Age Discrimination in Employment Act (ADEA) (*see* Doc. 107, pp. 3–4, para. 4(f)). It did not give Plaintiff the right to revoke the entire settlement or his claims under the Americans with Disabilities Act or Illinois' wage and hour laws (*see id.*). Also, the plain language of the revocation provision in the proposed comprehensive settlement agreement provides that the right to revoke did not arise until after Plaintiff signed the settlement agreement (Doc. 107, pp. 3–4, para. 4(f)). *See also* 29 U.S.C. § 626(f)(1)(G) ("[A] waiver may not be considered knowing and voluntary unless . . . the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired[.]"). But Plaintiff never signed the proposed comprehensive settlement agreement in the first instance.

Furthermore, as the Court previously explained, there was no indication the parties bargained for a right to revoke at the mediation and it was not a term expressly

included in the Settlement Memorandum signed by the parties (Doc. 98, p. 11; *see also* Doc. 80-11). The right to revoke was also not required by law under the circumstances. A waiver of rights and claims under the ADEA "in settlement of . . . an action filed in court . . . alleging age discrimination of a kind prohibited by [the ADEA]," like the agreement here between Plaintiff and Defendant, is governed by 29 U.S.C. § 626(f)(2), which does not require a revocation period in order for the waiver to be knowing and voluntary. *Compare* 29 U.S.C. § 626(f)(2) (omitting any requirement for a revocation period and requiring only that "[a] waiver in settlement of . . . an action filed in court by the individual . . . alleging age discrimination . . . may not be considered knowing and voluntary unless . . . the individual is given a reasonable period of time within which to consider the settlement agreement.") *with id.* at § 626(f)(1) (providing that waivers other than those governed by "paragraph (2)" may not be considered knowing and voluntary unless they are "part of an agreement between the individual and the employer . . . and the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement," amongst other things). *See also Powell v. Omnicom*, 497 F.3d 124, 131 (2d Cir. 2007) (holding that the time periods under § 626(f)(1) for a knowing and voluntary waiver of ADEA claims—21 days to consider a waiver and seven days to revoke the waiver—do not apply to settlement agreements reached in the context of a federal lawsuit, which are instead governed by the requirements of § 626(f)(2)); *Michelen v. IEEE GlobalSpec*, No. 21-2000-CV, 2022 WL 16557968, at *2 (2d Cir. Nov. 1, 2022) (unreported) (same); *Wu v. Haaland*, No. 20-2067, 2021 WL 2836457, at *3 (10th Cir. July 8, 2021) (unreported) (same); *Gomez v. AlliedSignal,*

*Inc.*, 172 F.3d 62, 1999 WL 89040, at *2 (10th Cir. 1999) (unpublished) (same); *Pompeo v.*

*Exelon Corp.*, No. 12 C 10098, 2014 WL 642756, at *3 (N.D. Ill. Feb. 19, 2014) (same). *See also*

*Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1173 (10th Cir. 2013) (provision requiring a

21-day consideration period does not apply to the settlement of a court case).

For these reasons, the seven-day revocation period at issue in the draft of the

comprehensive written settlement agreement is irrelevant and does not provide any

reason for the Court to change its mind about the enforceability of the settlement.

Plaintiff's motion is therefore denied to the extent that it is seeking reconsideration of the

Court's Orders dated May 12, 2023, and October 23, 2023.

### 2. Reconsideration of the Order dated January 17, 2024

The Order dated January 17, 2024, set a Show Cause hearing to question Plaintiff

about his failure to appear at the November 2023 hearing and to inquire as to whether he

intended to comply with the Court's orders and efforts to finalize the settlement (Doc.

114). Plaintiff did not, however, specifically indicate what part of the Order he is objecting

to or identify the ground(s) for reconsideration that support his motion (*see* Doc. 124).

The Court is unable to discern what Plaintiff's issue could possibly be. This Order was an

administrative-type order—it simply set a hearing and outlined the parameters for that

hearing (*see* Doc. 114). There were no rulings or substantive analysis within this Order

(*see id.*). As such, the Court has no idea what aspect of this Order might warrant

reconsideration. The motion is therefore denied to the extent that it is seeking

reconsideration of the Court's Order dated January 17, 2024.

### 3.   Reconsideration of the Order dated February 9, 2024

Finally, Plaintiff indicates that he is seeking reconsideration of the Court's Order dated February 9, 2024, which dismissed this case with prejudice due to his failure to follow the Court's orders and refusal to finalize the settlement (Doc. 124, p. 1; *see* Doc. 118). Once again, Plaintiff fails to identify the ground(s) for reconsideration that support his motion (*see* Doc. 124). And much of what he says in his motion does not squarely (or even tangentially) relate to any substantive aspect of the dismissal order. *See, e.g.,* Doc. 124, pp. 1, 2, 8 (scattered commentary that the settlement memorandum and draft settlement agreement should not be under seal); pp. 5–7 (discussing his desire to amend the complaint to assert legal malpractice claims against his former attorney). There are, however, a couple arguments that are clearly related to the dismissal order, which the Court will address.

First, Plaintiff rehashes his previously rejected argument that he did not know about the November 2023 hearing at which he failed to appear (Doc. 124, pp. 4–5; *see* Doc. 118, p. 5). Plaintiff's initial excuse (which he reiterates in the present motion) was that he did not see the Notice of Hearing because his PACER account had been disabled (Doc. 116, p. 3; Doc. 124, p. 5). But as the Court previously pointed out, he also received an email with the Notice of Hearing (Doc. 118, pp. 5–6). Plaintiff responded by claiming that the email "must have" gotten routed to his spam/junk folder (Doc. 124, p. 5). The Court is unmoved by such conjecture. It is evident that Plaintiff received the Court's other Orders that were issued after his PACER account was suspended in March 2023, (*see* Doc. 95, p. 3), because he filed documents in response to those Orders (*see* Doc. 100 (Plaintiff's

"objection" filed in response to the Order dated May 12, 2023, enforcing the settlement); Doc. 102 (Plaintiff's amended "objection" filed pursuant to the Court's Order dated June 1, 2023)). It is simply not believable that the *only* Order Plaintiff did not know about was the Order setting the November 2023 hearing. Such an excuse is far too convenient; it defies credulity.

Furthermore, it is indisputable that Plaintiff knew about the November 2023 hearing—at the very latest—by the night before it was scheduled to take place, which is when he sent an email to defense counsel indicating that he would not be appearing at the hearing (*see* Doc. 111-1). But defense counsel did not immediately see the email because Plaintiff sent it to the wrong email address.[2]  And Plaintiff made a deliberate (and unwise) choice not to directly inform the Court that he was unavailable and would not appear. It is self-evident that when a litigant is unable to attend a *court-ordered* hearing, they must notify *the court* of their unavailability. After all, it is the judge who presides over the case and has the sole authority to set a hearing and to likewise cancel a hearing. In this instance, Plaintiff's failure to do the obvious resulted in many people wasting their

---

[2] Plaintiff sent the email to defense counsel's old email address at his previous firm that he no longer had direct access to (Doc. 111; Doc. 111-1). Defense counsel only learned about the email after Plaintiff mentioned it in his response to the Show Cause Order, which prompted defense counsel to ask his former law firm to check for the email (Doc. 111, p. 1; *see* Doc. 111-1, pp. 1–4). On November 21, 2023, defense counsel received confirmation from his former firm that an email had been received, and the email was forwarded to him (Doc. 111-1, pp. 1–4). In other words, defense counsel saw the email for the first time eight days after it was sent. Plaintiff tries to excuse his folly by claiming that defense counsel never notified him about the change in contact information (Doc. 116, p. 3). However, defense counsel filed a notice of change of address on the docket on August 9, 2023 (Doc. 104). Furthermore, any emails sent to defense counsel's former email address—like Plaintiff's email sent on the on the evening of November 13, 2023— receive an auto-response indicating that Travis Kearbey is "is no longer affiliated with Armstrong Teasdale." (Doc. 111, p. 1 n. 1; Doc. 111-1, p. 1).

time in preparing for and attending the hearing.[3]

Even if the Court were to accept Plaintiff's excuses as to why he failed to appear at the November 2023 hearing, Plaintiff did not explain why this alone would warrant vacating the dismissal order (*see* Doc. 124). The record plainly shows that his failure to appear was not the only reason the Court decided to dismiss this case (*see* Doc. 118). In fact, it was not even the final nail in the coffin. Plaintiff was given yet *another* chance to appear before the Court to work through his purported issues with the comprehensive settlement agreement (*see* Doc. 114; *see also* Doc. 118, p. 6), but he once again refused to do so (*see* Doc. 116; *see also* Doc. 118, pp. 7–8). For these reasons, nothing Plaintiff said about his failure to appear at the November 2023 hearing has persuaded the Cour that it made any sort of error in dismissing the case.

The Court turns next to Plaintiff's contention that he has spent a substantial amount of money and time prosecuting this case, that Defendant's purported actions and the litigation process have taken a toll on him mentally, and that he suffered a significant monetary loss due to Defendant's purported actions (Doc. 124, pp. 2–3). Plaintiff's statements seem to imply that dismissing the case was an injustice, which could potentially serve as grounds for relief under the catchall category of Rule 60(b)(6). *See* Fed. R. Civ. P. 60(b)(6) (permitting the court reopen judgment for "any other reason that

---

[3] Defense counsel spent time preparing for the hearing and traveled from his office in St. Louis to appear (*see* Doc. 108, Doc. 112). His client traveled over 200 miles from West Plains, Missouri and spent the night in a hotel in order to appear for the hearing (*see* Doc. 108, Doc. 112). The Court and its staff spent time preparing for the hearing. They appeared for the hearing, as did the undersigned's courtroom deputy and a court reporter (who also had to travel to the courthouse for the hearing). Everyone waited around for 30 minutes to see if Plaintiff would show, but he never did.

justifies relief"); *Braun v. Vill. of Palatine*, 56 F.4th 542, 554 (7th Cir. 2022) ("Relief under Rule 60(b)(6) is available only in extraordinary circumstances" and "[a] judge may consider many factors when making this determination, including 'the risk of injustice to the parties.'") (quoting *Buck v. Davis*, 580 U.S. 100, 778 (2017)) (quotation marks omitted). But here, Plaintiff has not shown any extraordinary circumstances or any risk of injustice. He agreed to settle his case. And he was given ample time and numerous opportunities to sign the settlement agreement and/or discuss its terms, but he refused to do so apparently because he had come to believe that he deserved more money (*see* Doc. 124, p. 2). It was not an injustice to dismiss the case based on Plaintiff's continued defiance of the Court's orders—it was the rightful consequence demanded by his actions.

Finally, Plaintiff seems to suggest that the Court was wrong in concluding that he failed to comply with the orders to finalize the settlement because he "submitted to the defense attorney his 'CONDITIONAL ACCEPTANCE' which the defense then revoked" (Doc. 124, p. 7). But this argument, as well as the email that it is seemingly based on,[4] are incomprehensible. In the email, Plaintiff asked defense counsel to send him the final revised draft of the comprehensive settlement agreement and indicated that once he received it, he would then provide "[his] conditions of acceptance" (Doc. 99-1, pp. 4–5). Plaintiff stated that he would "only accept the offer if the defendant . . . accepts [his] conditions" (*Id.*). But the Court has no idea how any of this constituted some kind of "conditional acceptance," how defense counsel supposedly "revoked" that conditional

---

[4] Plaintiff did not provide a citation for his so-called "conditional acceptance," (*see* Doc. 124), but the Court believes it is an email that he wrote to defense counsel on May 23, 2023 (Doc. 99-1, pp. 4–5).

acceptance, or how the Court somehow erred in concluding that Plaintiff failed to comply with its Orders because Plaintiff does not support his argument with any kind of substantive explanation (*see* Doc. 124, p. 7). To the extent it can be understood, it seems the point Plaintiff was trying to make was that he would not sign a comprehensive settlement agreement that contained any conditions or terms beyond what was included in the Settlement Memorandum from mediation (*see* Doc. 124, p. 7; Doc. 99-1, pp. 4–5). The Court never expected him to. He was given numerous chances to explain which provisions of the comprehensive settlement agreement he found objectionable and why, but he refused every time.

In sum, Plaintiff's arguments fall short of the standard for relief under Rule 59(e) and Rule 60(b) and his motion to reconsider is therefore denied to the extent that it is seeking reconsideration of the Court's Order dated February 9, 2024.

## C. DEFENDANT'S MOTION FOR SANCTIONS (DOC. 112)

After Plaintiff failed to appear at the hearing on November 21, 2023, the Court indicated that it was inclined to grant Defendant's request for costs and fees associated with his appearance at the hearing, including travel expenses, hotel expenses, and attorney's fees (Doc. 108). Defendant filed a motion for sanctions, as instructed, in which he seeks an award of sanctions pursuant to the Court's inherent authority (Doc. 112).

A court has "inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it . . . ." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–50 (1991)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the

judicial process.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Chambers*, 501 U.S. at 44–45). One permissible sanction is requiring the misbehaving party to reimburse the other side's costs and attorney's fees. *Goodyear*, 581 U.S. at 107. Sanctionable misconduct includes willful disobedience of a court order, acting in bad faith, delaying or disrupting the litigation, hampering enforcement of a court order, and inflicting unnecessary costs on the court or the opposing party. *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (citing *Chambers*, 501 U.S. at 45–46). *See also Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1027 (7th Cir. 2019) ("It has long been understood that federal judges have a common-law power (sometimes called an inherent power) to impose sanctions on parties that needlessly run up the costs of litigation."); *Mañez v. Bridgestone Firestone N. Am. Tire, LLC,* 533 F.3d 578, 591 (7th Cir. 2008) (courts have the "power to punish the full range of litigation abuses," including "act[s] that inflic[t] needless costs on the court and the defendants").

Before imposing sanctions for litigation misconduct under its inherent authority, the district court must make a finding "that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez*, 845 F.3d at 776 (citation omitted). *See also REXA, Inc. v. Chester*, 42 F.4th 652, 671 (7th Cir. 2022) ("Before imposing sanctions for litigation misconduct, the district court must make a finding of 'bad faith, designed to obstruct the judicial process, or a violation of a court order.'") (quoting *Fuery*, 900 F.3d at 463–64). Mere negligence is not enough. *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013). *See also*

*REXA*, 42 F.4th at 671 ("Mere clumsy lawyering is not enough.") (quoting *Fuery*, 900 F.3d at 464).

Any sanctions imposed pursuant to a trial court's inherent authority "must be compensatory rather than punitive in nature." *Goodyear*, 581 U.S. at 108. In other words, the fee award "may go no further than to redress the wronged party for losses sustained,' and the court 'may not impose an additional amount as punishment for the sanctioned party's misbehavior.'" *REXA*, 42 F.4th at 673 (quoting *Goodyear*, 581 U.S. at 108).

Here, Defendant's motion for sanctions is based on Plaintiff's failure to appear for a hearing on November 14, 2023. The purpose of that hearing was to hear arguments from both sides regarding Plaintiff's apparent objections to the comprehensive settlement agreement, which he had been refusing to sign for well over a year despite the Court's order to do so. At the time that Plaintiff failed to appear at the hearing, the Court harbored some lingering doubt as to whether Plaintiff was intentionally trying to avoid consummating the settlement. All doubt was snuffed out, however, by his subsequent conduct. It is now abundantly clear that Plaintiff made a deliberate and willful choice to not appear at the November 2023 hearing because he did not want to follow through with and consummate the settlement. He essentially admitted as much when he told defense counsel in an email the night before the hearing that "[s]ince there in reality is no binding, fully executed contract, there is no controversy for the court to adjudicate. A hearing would be inappropriate" and a "waste [of] time" (Doc. 111-1, pp. 9–10). And he subsequently told the Court that he "fear[ed]" that if he attended a hearing that he would be "compelled, against his will" to sign the formal settlement agreement and that he

"cannot attend a hearing where it is already expressed that he will be sanctioned and compelled to finalize the defendant's eight-page settlement agreement" (Doc. 116, pp. 3, 6). Such statements make clear that he was making a willful choice to flout the Court's orders to attend the hearing and finalize the settlement agreement.

Plaintiff's actions inflicted needless costs on defense counsel and his client (not to mention the Court) when they prepared and showed up for the November 2023 hearing, completely unaware that Plaintiff would not be attending. As already explained, Plaintiff's claim that he did not know about the November 2023 hearing is simply not believable (*see supra* pp. 12–13; Doc. 118, pp. 5–6). He was clearly aware of the hearing. But he made no attempt to notify defense counsel that he would not be appearing until after the normal close of business on the night before the hearing (*see* Doc. 111-1 (Plaintiff's email sent at 6:32pm on Nov. 13, 2023)). At that point, Mark Garnett was already on the road (*see* Doc. 112-2), and defense counsel had already begun preparing for the hearing (*see* Doc. 113-1). There is no indication that Plaintiff checked his email for a response from defense counsel later that night or early the next morning, or that he tried to call defense counsel (*see* Docs. 116, 124). And as already mentioned, he made no effort to notify the Court that he would not be at the hearing (*see supra* p. 13). Plaintiff's actions, or lack thereof, demonstrate that he was unconcerned about any inconvenience or costs that he was inflicting on Defendant, defense counsel, or the Court.

It is for these reasons that the Court finds Plaintiff willfully abused the judicial process and violated Court orders. While the Court would be justified in ordering Plaintiff to pay Defendant's costs and fees associated with his failure to appear, the Court

opts to exercise its discretion not to do so. The Court acknowledges that it previously said it was inclined to award Defendant its costs and fees (Doc. 108), however, that was before the Court knew how this case would ultimately end. The Court always assumed that Plaintiff would eventually come around and (perhaps begrudgingly) take the settlement that he had agreed to. The Court never imagined that Plaintiff would act against his own self-interest and continue his obstinacy to the point that he left the Court with no option but to dismiss the case. Ordering monetary sanctions now, after the ultimate sanction of dismissal with prejudice has already been imposed and Plaintiff was left with nothing, feels too severe, particularly given Plaintiff's numerous past representations about his tenuous financial state (*see, e.g.,* Doc. 91; Doc. 95; Doc. 124, p. 2). Defendant's motion for sanctions is therefore denied.

## CONCLUSION

Plaintiff's Second Motion to Reconsider (Doc. 124), and his duplicative motion titled "Appeal of Magistrate Judge Decision to District Court" (Doc. 126) are **DENIED**. Defendant's motion for sanctions (Doc. 112) is also **DENIED**.

**IT IS SO ORDERED.**

**DATED: July 18, 2024**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
